FILED

2015 Sep-14  AM 09:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| THOMAS SCOTT PIKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-CV-01053-TMP |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION

### I.      Introduction

The plaintiff, Thomas Scott Pike, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").  Mr. Pike timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the undersigned's jurisdiction.  (Doc. 9).

Mr. Pike was forty-three years old at the time of the alleged disability onset and has at least a high school education.  (Tr. at 31).  His past work experiences

include employment as a sales route driver and as a receiving supervisor.  *Id.*  Mr. Pike claims that he became disabled on December 1, 2010, due to tarsal tunnel syndrome, plantar fasciitis, neuropathy in both feet, high blood pressure, sleep apnea, and acid reflux.  (Tr. at 221).  He has been on short-term and long-term disability from his employment since that date.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or

equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability

to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Pike meets the non-disability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 19). She further determined that Mr. Pike engaged in substantial gainful activity since the alleged onset of his disability.[1] *Id.* The claimant's income is almost entirely due to short- and long-term disability insurance payments. He received only $52.97 in wages for watching a four-hour safety video at FedEx, but he was never called back for work. Accordingly, the plaintiff is not precluded from an award of disability.

The ALJ determined that Mr. Pike's lumbosacral degenerative joint disease, tarsal tunnel syndrome, obesity, and plantar fasciitis are considered severe based on the requirements set forth in the regulations. *Id.* She further determined that the plaintiff had nonsevere impairments of asthma and depression. *Id.* The ALJ found that these impairments neither meet nor medically equal any of the listed

---

[1] "The claimant's Earnings' Record reveals wages in the amount of $11,200.15 in 2011 (Exhibit 8D). Further records reveal Hartford Life Insurance Company paid the claimant $11,147.18 in 2011, consistent with the claimant's testimony of receiving short- and later long-term disability. Actual wages received in 2011 are reported to be $52.97, consistent with the claimant's testimony of receiving four hours in wages from FedEx for watching a four-hour safety video (Exhibit 4D)." (Tr. at 19).

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21). The ALJ found that the plaintiff has the residual functional capacity to perform sedentary work within certain parameters. The plaintiff can stand and walk in fifteen-minute increments and sit in two-hour increments over an eight-hour work day, and he is limited to simple, repetitive, routine tasks. (Tr. at 22).

According to the ALJ, "transferability of job skills is not an issue because the claimant does not have past relevant work." (Tr. at 31). Even though Mr. Pike cannot perform the full range of sedentary work, he has the RFC to perform a significant range of sedentary work. The ALJ found that there are a significant number of jobs in the national economy that he is capable of performing, such as charge account clerk, assembler, and cuff folder. (Tr. at 32). The ALJ concluded her findings by stating that Mr. Pike "has not been under a disability, as defined in the Social Security Act, from December 1, 2010, through the date of this decision." *Id.*

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commission. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson J., dissenting), quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966).  Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

This court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, … but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). While physicians may opine about the existence of a medical condition and its effect on the claimant, opinions regarding his ability to work and whether he is disabled are not binding on the ALJ. Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commission." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Mr. Pike alleges that the ALJ's decision should be reversed and remanded because the ALJ did not properly evaluate the opinion of his treating physician, Dr. Danalynn Guasteferro, that he is limited to standing for no longer than ten minutes,

no lifting, and driving only when necessary. (Doc. 10, pp. 7). The plaintiff also asserts that the ALJ had a duty to contact Dr. Guasteferro to expand the record to address any inconsistencies between Dr. Guasteferro's disability determination and the plaintiff's medical records. (Doc. 10, p. 11). Finally, the plaintiff claims the ALJ did not properly credit the plaintiff's subjective testimony of the pain and limitations caused by his impairments. (Doc. 10, pp. 9-10).

### A.    Treating Physician's Diagnosis

Mr. Pike contends that the ALJ improperly evaluated his treating physician's opinion. (Doc. 10, p. 7). A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the:

"(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 2004) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Ultimately, opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, … but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Mr. Pike's treating podiatrist, Danalynn Guasteferro, D.P.M., initially saw him on January 26, 2006, for bilateral foot pain. (Tr. at 24). Mr. Pike was diagnosed with "pain and edema, rule out tarsal tunnel, bilateral plantar fasciitis, and pes planus with pronation with equinus." *Id*. Dr. Guasteferro referred him for "electromyogram, nerve conduction velocity, physical therapy, and orthotics." *Id*. On April 12, 2006, Mr. Pike returned to Dr. Guasteferro with bilateral foot pain and was again diagnosed with "pain and edema, rule out tarsal tunnel, bilateral plantar fasciitis, and pes planus with pronation." *Id*. On April 28, 2006, Dr. Guasteferro conducted right tarsal-tunnel-release surgical procedure. *Id*. She performed left tarsal tunnel release on June 16, 2006. *Id*. Dr. Guasteferro conducted a bilateral plantar fascia release on August 24, 2007. *Id*. Dr. Guasteferro put the plaintiff on short term disability leave from December 1, 2010 to March 1, 2011. (Tr. at 25). On a health care form related to short-term disability benefits dated December 1, 2010, Dr. Guasteferro reported that the plaintiff's condition began on January 26, 2006, and would persist throughout the plaintiff's life. *Id*. On January 28, 2011, she completed an attending physician statement of continued disability, stating that the plaintiff must remain on short-term disability until further notice. (Tr. at 361). On March 1, 2011, Dr. Guasteferro concluded that the plaintiff should be converted to long-term disability. (Tr. at 329).

Mr. Pike argues that Dr. Guasteferro's opinion regarding his disability should be controlling and that the ALJ improperly gave greater weight to the opinions of a non-treating physician, Dr. Anderson.  The ALJ stated in her opinion:

> Dr. Guasteferro's records continue and on December 1, 2010, she placed the claimant on leave until March 1, 2011.  She also completed a Health Care Form on December 1, 2010, in which she reported the claimant would be incapacitated from December 1, 2010, until March 1, 2011.  She reported that his condition began January 26, 2006, and would last a lifetime.  She reported treating him steadily since that time with medication, referrals to orthopedics and neurology, nerve conduction velocity, and physical therapy.  She reported him unable to perform standing and lifting due to recurrent tarsal tunnel, positive nerve conduction velocity, bilateral plantar fasciitis, symptoms of pain, weakness, and burning, inability to stand and walk, and now having proximal upper extremity weakness (Exhibit 10F).

> I considered the doctor's opinion but also note that she [is] a podiatrist, not a medical doctor.  She is an acceptable medical source according to the regulations and does have a particular specialty with the feet because she is a podiatrist.  However, certain factors caused me not to give her the most weight as to opinion about inability to work.

> The record consists of other treatment that tends to show improvement.  The record shows significant activities of daily living inconsistent with her opinion.  Moreover, in cross examination with Dr. Anderson, I became persuaded that this medical expert's opinion was better supported.

> The [claimant's] representative queried Dr. Anderson as to what appear to be putative specialist credentials as a podiatric surgeon.  Dr. Anderson indicated that there is no such specialty or branch of podiatry[.]  He explained that he is qualified to come to conclusions [and] has experience as a member of licensing boards and that is why

he was able to testify thusly.  He also explained that his several decades long history as a surgeon qualify him to assess the impairments alleged.  He said that podiatry is limited to soft tissue work and not the bones.  He noted there were no x-rays in the record that showed more than soft tissue foot problems and that they are generally addressed with orthotics. Given his qualifications, I gave his opinion more weight particularly as it is consistent with the activities actually performed [by the claimant].   In reviewing his opinion, I agreed with his conclusion that the claimant could do sedentary work. I agree with his opinion that the claimant could not do all the walking required in that work and limited the claimant accordingly.   However, I limited the claimant to shorter increments of weight bearing than as testified.  I also note that Dr. Guast[e]ferro, when the claimant was under treatment and given the temporary note, would have him limited to weight bearing for no more than 10 minutes.  I nonetheless limited the claimant to 15 minute increments of such weight bearing, which is a marginal difference, given that Dr. Anderson suggested a thirty minute increment.

. . .

Regarding the claimant's alleged tarsal tunnel and plantar fasciitis, he testified at the hearing that he stopped work due to his foot pain and is currently receiving long term disability through Hartford Insurance Company due to his feet problems.  The claimant's records reveal bilateral plantar fasciitis and tarsal tunnel beginning in 2006 with release of bilateral tarsal tunnel in 2006 and release of bilateral plantar fascia in 2007 (Exhibits 1F, 2F, and 10F).  The claimant continued follow up with Dr. Guasteferro, who placed him on short-term disability and then on long-term disability as a result of these problems on December 1, 2010, and March 11, 2011, respectively (Exhibits 9F and 10F).   The claimant was referred to Bledsoe Occupational Therapy for assessment on May 6, 2011, and recommended light exertional limits (Exhibit 8F).   The claimant's subjective reports reveal he takes his daughter to and from school, does laundry, cleans house, helps his daughter with homework, performs his self-care without a problem, takes care of his daughter and the dog, visits with family and friends, drives, shops, attends church, and rides the lawn

mower (Exhibit 5E). Thus the claimant's bilateral tarsal tunnel and plantar fasciitis are found to be a severe but not disabling impairment and are considered in his residual functional capacity.

I have considered the three impairments listed above in combination, together: obesity, foot problems and back problems. Even in combination, the claimant's activities are at least reflective of sedentary capacity.[]

. . .

Dr. Guasteferro's repeated assessments of the claimant's inability to stand, lift, drive, and work, are not accepted. The claimant's own subjective reports reveal he continues [t]o drive, do laundry, clean house, shop, visit, and ride the lawn mower. Thus, the claimant is restricted to a sedentary exertional level taking his impairments into consideration but not limiting him to being incapacitated. I proposed other reasons why I found her opinions unsupported as discussed above. However, I add also that this source was involved in a workers compensation claim and that some of the claimant's demeanor when presenting her may have been with hopes of secondary gain.

In sum, the above residual functional capacity assessment is supported by the evidence of record and the claimant's subjective reports of functioning. The claimant's records reveal severe impairments of tarsal tunnel and plantar fasciitis since 2006, with bilateral release for both in 2006 and 2007, respectively. He continued to work until December 2010 when he went on short-term disability and in March 2011, long-term disability. However, [the] Bledsoe Occupational Therapy assessment in May 2011 found the claimant limited to a light exertional level, which seems to be supported by the claimant's reports of functioning, including driving, doing laundry, cleaning house, taking care of his daughter and the dog, visiting with family and friends, and riding the lawn mower (Exhibits 5E and 8F). However, the claimant has been given a sedentary exertional [level] in his residual functional capacity taking all of his records into consideration.

(Tr. at 25-31).

The court finds that the ALJ did not inappropriately consider Dr. Gausteferro's opinions.  There were several good causes for giving little weight to her opinions.  First, to the extent Dr. Gausteferro offered the direct opinion that plaintiff is disabled and cannot work, this goes beyond the medical opinions the ALJ is required to weigh and consider.  Such legal conclusions remain in the province of the Commissioner, notwithstanding an expressed opinion by a treating physician.  Second, there is no indication that Dr. Gaustefero, a podiatrist, was qualified to express any opinion about the plaintiff's ability to lift, except to the extent it is directly limited by his foot problems.  Opinions regarding plaintiff's back pain and upper-extremity pain are simply beyond her expertise.  Third, even if her opinion regarding limitations on his ability to lift are the product of his foot problems, the opinions are inconsistent with plaintiff's self-reported daily activities and other medical evidence.  The assessment by Bledsoe Occupational Therapy found plaintiff to be capable of light exertional work.  The assessment objectively measured his ability to stand, walk, and lift, and these measurements directly contradicted Dr. Gausteferro's opinions.  For these reasons, the Court is of the opinion that the ALJ had good cause to disregard Dr. Guasteferro's assessment of

Mr. Pike's alleged disability. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

## B. Medical Consultation

The plaintiff asserts that the ALJ had a duty to contact Dr. Guasteferro and expand the record to address the discrepancies between the medical records and Dr. Guasteferro's definition of disability.  However, the ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision.  *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007).   At the hearing level, the Commissioner has delegated that responsibility to the ALJ, and it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity based on the entirety of the evidence presented, not just medical evidence.  *See, e.g.,* 20 C.F.R. § 404.1546(c).

The Eleventh Circuit has determined that a consultative examination must be ordered if one is needed to make an informed decision in regards to the claimant's disability.  *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984), citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B).  An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the

claimant's] ability to work, but the current severity of [the claimant's] impairment is not established."   20 C.F.R. § 404.1519a(b)(4).   However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination.   *Good v. Astrue*, 240 Fed. Appx. 399, 403-404 (11th Cir. 2007).   In the instant case, the ALJ had available:

- Medical Records from: St. Vincent's Birmingham dated April 2006; Physician's Medical Center dated November and December 2006; Med Help, PC dated January 2010; Southview Medical Group dated April 2002 to August 2010; from St. Vincent's Orthopedics dated December 2010; Newton & James Neurology dated December 2010;
- RFC Assessment from Jennifer B. Davis;
- Physical and Occupational Therapy Records from Bledsoe Occupational Therapy dated May 2011;
- Treatment Records from Southview Medical dated March 2011 to April 2012;
- Records from Dr. Danalynn Guasteferro dated January 2006 to January 2011;
- Records from Dr. Robert W. Nesbitt dated March 2011 to May 2011;
- Records from Vestavia Hills Imaging dated March 2011; and
- Records from Dr. Elizabeth Stevenson dated March 2011 to December 2011.

The record in this case was sufficiently developed to allow the ALJ to make an RFC determination without seeking an additional consultative examination or further information from Dr. Guasteferro.

## C. Subjective Pain Testimony

The plaintiff further alleges that the ALJ's decision should be reversed and remanded because the ALJ failed to properly evaluate the credibility of the Plaintiff's testimony of disabling symptoms.   Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ thoroughly discussed the plaintiff's medical impairments and his allegations of pain:

> The claimant stated that he was on short term disability from December 2010 until May 30, 2011, and is now on long term disability through Hartford Insurance due to his feet problems.  He stated that he has sought other work without success.  He stated that he does not

have medical insurance with his disability.  He stated that he has insurance since January 2012 when he got married.  He stated that he applied for work at FedEx, went to the safety class, was never called in, and was sent a W2 Form for the four hour safety video he watched. He stated that he has sleep apnea.

As far as activities, the claimant stated that a typical day involves getting his daughter up and taking her to school, washing clothes, cleaning house, washing dishes, getting his daughter home from school, and helping her with homework.  He reported problems with sleep and problems walking on rising.  He stated that he has orthotics in his shoes, but it creates a sensation of stepping on broken glass with a pain level of eight on a scale of ten.

Even so, the claimant admitted he can walk 15 to 20 minutes at WalMart, in spite of allegedly constant foot pain.  He stated that he has concentration problems due to his foot pain.  He stated that he takes medication for pain, depression, hypertension, and diabetes, and they help.

The claimant testified that he has custody of his daughter who is 13 years of age and has a type of autism.  He stated that he has joint custody of her, and they go to the movies and to her mother's house. He stated that he reads the news, keeps up with friends from school on FaceBook a couple of hours a day, sees few friends outside of the house, rides the lawn mower, and has planted a few flowers.  His activity level is not so structured as to suggest he is unable to do sedentary work.

. . .

The claimant completed a Disability Report in which he alleged impairments of tarsal tunnel, sleep apnea, plantar fasciitis, high blood pressure, acid reflux, and neuropathy in both feet.  He reported that he is five feet ten inches in height and weighs 258 pounds.  He reported that he stopped work on December 1, 2010, due to his conditions.  He reported that he completed high school and received

training in telecommunications.  He reported taking medications for high blood pressure, pain, acid reflux, and cholesterol (Exhibit 10E).

The claimant completed a Function Report on March 1, 2011.  He reported living with family.  He reported daily activities of having breakfast with his daughter, taking her to school, exercising to lose weight, and visiting his parents or cleaning house.  He reported taking care of his 1[3]-year-old daughter and feeding and watering the indoor dog.  He reported having sleep apnea and using a CPAP machine with periods of drowsiness during the day.  He denied having problems with personal care.  He reported preparing frozen dinners or cereal. He reported riding the lawn mower and doing laundry.  He reported that he drives and grocery shops once a week for about 20 minutes. He reported enjoying spending time with [his] daughter watching movies together, although he said his pain interferes more now with his ability to concentrate on these things.  He reported spending time with his parents and friends, sitting and talking, most days, and attending church every Sunday.  He reported difficulty being on his feet and concentrating due to pain.  He sings in church, but only while seated.  I note that in hearing testimony, he denies current attendance, but his symptoms are not observed to be worse over time since he completed this report.  He reported handling stress well and handling changes in a routine well (Exhibit 5E).

This activity report is not inconsistent with sedentary work.  It shows that the claimant decidedly has no difficulty going out in the community without assistance.  He can ambulate without any assistive device.  He can push and pull objects in his daily life and he can do so with heavier things in the yard. He converses, can hear adequately, concentrate adequately on simple things, and has no mental limitations that prevent his ability to sustain such concentration for reasonable periods of time.

(Tr. at 22-24).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996)("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Id.* (internal quotations omitted).

In the present case, the ALJ found that the plaintiff's subjective allegations of pain and disability are not consistent with his testimony regarding his activities of daily living. The ALJ's determination is not a broad rejection of the plaintiff's allegations and the ALJ illustrated in her opinion that she considered the plaintiff's medical condition as a whole.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Pike's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and good cause in accord with the applicable law.  A separate order will be entered.

DONE this 14th day of September, 2015.

_____

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE